**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF WISCONSIN**

---

THOMAS J. MAULSON,

Plaintiff,

v. Case No. 25-cv-638-wmc

WILL TAEGE,

Defendant.

---

**MEMORANDUM OF LAW IN SUPPORT OF**
**DEFENDANT'S MOTIONS *IN LIMINE***

---

Defendant, Will Taege, submits this memorandum of law in support of his motions *in limine*.

## ARGUMENT

### Motion *in Limine* No. 1:

### Motion to Exclude Evidence and Argument Regarding Uses of Force by Taege Other Than During the Events at Issue in this Case Pursuant to Fed. R. Evid. 402, 403 and 404

Teage moves this Court for an order excluding any evidence or argument regarding instances in which he used force as a deputy sheriff other than the events at issue in this case pursuant to Federal Rules of Evidence 402, 403, and 404. Such an order should extend to all evidence, including any lay or expert testimony, and argument on the subject.

First, evidence of other uses of force by Taege should be excluded under Rule 402 because none of those uses of force are relevant to the circumstances of plaintiff's arrest, including the amount of force that was reasonable for Taege to use during his encounter with plaintiff. The circumstances presented to Taege in responding to *other, unrelated*

calls for service and any resulting uses of force by Taege, including any injuries allegedly suffered by individuals in the course of those other uses of force, do not tend to make any fact relevant to *this case* more or less probable.

Second, the introduction of evidence regarding other uses of force by Taege would be unfairly prejudicial to Taege. The introduction of any such evidence could cause the jury to improperly and unfairly conclude that Taege should bear responsibility in this case for other circumstances involving the use of force, none of which have any relevance to plaintiff's arrest or plaintiff's lone claim against Taege arising from that arrest.

Third, the introduction of evidence regarding other uses of force by Taege would also be confusing to the jury and a waste of time, because the introduction of any such evidence would require a mini-trial about the circumstances surrounding those uses of force and any resulting injuries. None of those other events are at issue here, and each involves a unique set of facts unrelated to the events actually at issue in this case.

Under Rule 403, evidence of other uses of force by Taege must therefore be excluded because any minimal probative value would be substantially outweighed by the danger of unfair prejudice to Taege, the likelihood of confusion of the issues, and the consequential wasting of the jury's time.

Further, this Court should also exclude evidence of other uses of force by Taege because, if allowed, it would amount to nothing more than improper propensity evidence under Rule 404(b). None of the exceptions set forth in Rule 404(b)(2) to the general prohibition on the admission of evidence of other acts to prove a person's character are relevant to plaintiff's claims or Taege's defenses. As such, evidence of other uses of force by Taege must be excluded under Rule 404(b) as well.

For these reasons, this Court should enter an order excluding all evidence and argument regarding other uses of force by Taege pursuant to Rules 402, 403, and 404.

**Motion *in Limine* No. 2:**

**Motion to Exclude Evidence and Argument Regarding Discipline of Taege by the Oneida County Sheriff's Office Unrelated to the Arrest of Plaintiff Pursuant to Fed. R. Evid. 402, 403, and 404**

Teage moves this Court for an order excluding any evidence or argument regarding discipline imposed by the Oneida County Sheriff's Office unrelated to the arrest of plaintiff pursuant to Federal Rules of Evidence 402, 403, and 404. Such an order should extend to all evidence, including any lay or expert testimony, and argument on the subject.

In discovery, plaintiff sought records relating to any discipline imposed by the Oneida County Sheriff's Office on Taege during his employment as a deputy sheriff. In response, Taege produced records relating to an instance in July 2024 in which he was disciplined for violating the Sheriff's Office's vehicle pursuit operations policy. No part of the investigation or resulting discipline involved plaintiff or his arrest on March 30, 2024.

This Court should exclude any evidence regarding this instance of discipline of Taege by the Sheriff's Office under Rule 402 because it is not relevant to the circumstances of plaintiff's arrest, including the amount of force that was reasonable for Taege to use during his encounter with plaintiff. Thus, this single instance of discipline does not tend to make any fact relevant to this case more or less probable.

Additionally, this evidence qualifies for exclusion under Rule 403 because it has no probative value, and will only confuse the issues and waste time. Nothing about the investigation or resulting discipline involved plaintiff or in any way related to the circumstances at issue in this case. Moreover, if evidence of this discipline were introduced, Taege would have an interest in ensuring that the entire context of the

investigation and discipline were fleshed out before the jury. Any minimal probative value for this evidence is therefore substantially outweighed by the potential confusion and likely waste of time that would result from its introduction.

In turn, all evidence regarding this discipline should also be barred under Rule 404(b)(1) as improper other acts evidence, as none of the permitted uses listed in Rule 404(b)(2) apply.

Any evidence or argument related to Taege's disciplinary history as a deputy sheriff must be excluded because it is irrelevant prior acts evidence that will only serve to waste the Court's time, confuse the jury, and unfairly prejudice Taege.

## Motion *in Limine* No. 3:

## Motion to Exclude Evidence and Argument Regarding Citizen Complaints Against Taege Pursuant to Fed. R. Evid. 402, 403, and 404

Taege moves this Court for an order excluding any evidence or argument regarding citizen complaints filed against him as a sheriff's deputy pursuant to Federal Rules of Evidence 402, 403, and 404. Such an order should extend to all evidence, including any lay or expert testimony, and argument on the subject.

In discovery, plaintiff sought records relating to any citizen complaints filed against Taege during his employment as a deputy sheriff. In response, Taege produced records relating to a citizen complaint filed with the Sheriff's Office in August 2025 regarding his involvement in an arrest of another person, not involving plaintiff. The citizen complaint was internally investigated by the Sheriff's Office and was deemed to be unfounded and did not result in any discipline of Taege.

This citizen complaint is irrelevant under Rule 402, as it involved a single, unsubstantiated complaint regarding an arrest of a different subject made seventeen

months after plaintiff's arrest. The complaint has no relation to the arrest of plaintiff and therefore does not tend to make any fact relevant to this case more or less probable.

Any evidence of this citizen complaint should similarly be barred under Rule 403, as it is unfairly prejudicial to Taege and will only confuse the issues and waste time. The only purpose for such evidence would be to attempt to unfairly paint Taege in an unflattering light based on an unsubstantiated, unrelated complaint. Moreover, if evidence were allowed with respect to the citizen complaint, Taege would have an interest in ensuring that the full context regarding the underlying complaint and its lack of merit was fully presented. Thus, allowing any evidence of the citizen complaint would only invite a mini-trial and serve to the confuse and distract the jury from the facts relating to plaintiff's arrest. Any minimal probative value of such evidence is substantially outweighed by the danger of unfair prejudice to Taege and the resulting confusion of the issues and waste of the jury's time.

The evidence regarding the citizen complaint should also be barred as improper other acts evidence. Because it lacks any probative value, the only result of allowing the citizen complaint into evidence would be to tarnish Taege's character in the hope that the jury would improperly conclude that Taege acted similarly during the subject incident. Such evidence is barred under Rule 404(b)(1), and none of the exceptions set forth in Rule 404(b)(2) apply.

In sum, the single unsubstantiated citizen complaint against Taege is irrelevant, unfairly prejudicial, and improper other acts evidence that must be excluded Rules 402, 403, and 404.

## Motion *in Limine* No. 4:

### Motion to Exclude Evidence and Argument Regarding Whether Taege's Stop, Detention, and Arrest of Plaintiff Were Unlawful Pursuant to Fed. R. Evid. 402 and 403

Taege moves this Court for an order excluding any evidence or argument suggesting or implying that his stop, detainment, and arrest of plaintiff were unreasonable or otherwise unlawful pursuant to Federal Rules of Evidence 402 and 403. Such an order should extend to all evidence, including any lay or expert testimony, and argument on the subject.

Plaintiff has not pleaded a Fourth Amendment claim against Taege in which he challenges whether his stop, detainment, or arrest was reasonable or lawful; plaintiff has instead challenged only the force used during the encounter between him and Taege. (*See* ECF No. 1, ¶¶ 2, 25.) In other words, plaintiff has placed at issue only the force used by Taege, not whether the Taege was authorized to stop, detain, or arrest him in the first place. Accordingly, any evidence or argument related to the legality of the stop, detainment, or arrest is irrelevant, as it is not plead as a basis for plaintiff's Fourth Amendment claim and is therefore not an element of proof necessary for plaintiff to succeed on the merits of the claim he did plead.

Regardless, any minimal relevance of evidence regarding whether the stop, detention, and arrest were lawful is substantially outweighed by the risk that the evidence would confuse the jury about the issue actually in dispute (whether Taege used unreasonable force) and would needlessly waste the jury's time.

To date, plaintiff has presented no basis to challenge his stop, detention, and arrest, and this Court should preclude plaintiff from attempting to undermine the lawful

basis for the stop, detention, and arrest at this stage of the case by offering evidence or argument that is inadmissible under Rules 402 and 403.

**Motion *in Limine* No. 5:**

**Motion to Exclude Evidence and Argument Related to the Absence of a Recording from the Squad Camera of Sergeant Thomas Williams Pursuant to Fed. R. Evid. 402 and 403**

Taege moves this Court for an order excluding any evidence or argument related to the absence of a recording from the dash camera in the patrol car used by Oneida County Sheriff's Department Sergeant Thomas Williams, and the reasons related to its absence, pursuant to Federal Rules of Evidence 402 and 403. Such an order should extend to all evidence, including any lay or expert testimony, and argument on the subject.

During discovery, plaintiff elicited evidence regarding the fact that no recording exists of the events at issue from the dashboard camera in the patrol car operated by Sergeant Williams when he responded to the call regarding plaintiff's arrest. In sum, the evidence indicates that Sergeant Williams turned off his squad car's dashboard camera when he arrived on scene following plaintiff's arrest.

Ultimately, Taege had no control over the absence of any squad camera footage from Sergeant William's vehicle, and Williams is not a defendant in this case. As such, any evidence, reference, or argument with respect to the absence of a recording from the dash camera of Sergeant William's patrol vehicle is irrelevant under Rule 402. Nothing regarding the absence of the footage from the patrol car has any tendency to make any relevant fact more or less probable. Moreover, there is a recording of what occurred when plaintiff went to the ground – the recording from Taege's own dash camera.

Any attempt by plaintiff to rely on the absence of a recording from Sergeant William's dash camera would only serve to unfairly prejudice Taege by inviting the jury

to draw an inference adverse to him, as the only defendant, when he had no control over or involvement in Williams' decision to turn his camera off when he arrived on scene after plaintiff's arrest. The risk of such unfair prejudice to Teage substantially outweighs any probative value of this evidence, and the evidence therefore must be excluded under Rule 403 as well.

**Motion *in Limine* No. 6:**

**Motion to Exclude Evidence and Argument Related to Any Internal Review (Or the Absence Thereof) of the Arrest of Plaintiff by the Oneida County Sheriff's Office Pursuant to Fed. R. Evid. 402 and 403**

Taege moves this Court for an order excluding any evidence or argument related to the absence of a formal internal review of the arrest of plaintiff by the Oneida County Sheriff's Office pursuant to Federal Rules of Evidence 402 and 403. Such an order should extend to all evidence, including any lay or expert testimony, and argument on the subject.

In discovery, plaintiff sought evidence, including deposition testimony, on whether the Oneida County Sheriff's Office conducted a formal internal review of plaintiff's arrest, including force used by Taege during the arrest, pursuant to its use-of-force policy. The absence of any such formal internal review, however, is not relevant to plaintiff's lone claim against Taege – that he used unreasonable force during his encounter with plaintiff. In short, the absence of any such formal internal review does not tend to make any fact relevant to the alleged use of excessive force more or less probable. Because it is not relevant, Rule 402 bars any evidence, reference, or argument to the absence of a formal internal review related to the arrest.

Moreover, any evidence, argument, or reference to the absence of a formal internal review by the Sheriff's Office would be unfairly prejudicial to Taege, and the resulting unfair prejudice would substantially outweigh any limited probative value of the evidence.

Ultimately, the decision whether to conduct a formal internal review would fall to individuals within the Sheriff's Office other than Taege. Thus, any effort by plaintiff to encourage the jury to draw a negative inference from the absence of such a formal internal review would unfairly paint Taege in a negative light for a decision made by someone other than him. Moreover, as this Court presumably will instruct the jury, the issue the jury must decide is whether Taege used unreasonable force, and not whether he violated Sheriff's Office policy. *See* Seventh Circuit Pattern Civil Jury Instruction 7.04. To that end, evidence regarding the absence of a formal internal review would only serve as a distraction and needlessly confuse the jury.

For those reasons, any evidence, reference, or argument regarding the absence of a formal internal review by the Sheriff's Office of plaintiff's arrest must be excluded under Rule 402 and 403.

## Motion *in Limine* No. 7:

### Motion to Exclude Evidence and Argument Related to Any Statements Made by Officers of the Oneida County Sheriff's Office Other Than Taege to the Media Regarding Plaintiff's Arrest Pursuant to Fed. R. Civ. P. 402 and 403

Taege moves this Court for an order excluding any evidence or argument related to statements made by officers of the Oneida County Sherrif's Office other than Taege to the media regarding plaintiff's arrest pursuant to Federal Rules of Evidence 402 and 403. Such an order should extend to all evidence, including any lay or expert testimony, and argument on the subject.

Taege is the only defendant in this lawsuit. As such, any statements made by any other members of the Oneida County Sheriff's Office to the media are not relevant to plaintiff's claim against Taege. Moreover, because no other officers are parties to this case,

any statements to the media by other officers cannot be offered by plaintiff as statements by a party opponent. The introduction of such statements could only to serve to distract and confuse the jury and would unfairly prejudice Taege to the extent the jury were invited to attribute any such statements to him. *See Thompson v. City of Chicago*, 472 F.3d 444, 458 (7th Cir. 2006).

For these reasons, any statements by Sheriff's Office personnel other than Taege to the media regarding plaintiff's arrest are inadmissible and should be excluded under Rules 402 and 403.

**Motion *in Limine* No. 8:**

**Motion to Exclude Evidence and Argument Related to Any Allegation That Taege Targeted Plaintiff Because He is Native American Pursuant to Fed. R. Civ. P. 402 and 403**

Taege moves this Court for an order excluding any evidence or argument based on any allegation that Taege targeted plaintiff for arrest or a use of force based on the fact that plaintiff is Native American pursuant to Federal Rules of Evidence 402 and 403. Such an order should extend to all evidence, including any lay or expert testimony, and argument on the subject.

Public reports regarding Taege's arrest of plaintiff suggested, at times, that the fact that plaintiff is Native American played a role in his arrest. Absent any evidence that racial animus actually played a role in the events at issue in this case, however, the introduction of any allegation or argument that race was a factor would necessarily be unfairly prejudicial, would present an extreme distraction, and would undoubtedly confuse the jury. *See, e.g.*, *Pryor v. Corrigan*, 124 F.4th 475, 496 (7th Cir. 2024) (affirming trial court's decision to bar evidence related to race because court was "not aware of any evidence suggesting that racial animus played a role in the events in question").

Here, there is in fact no evidence that Taege targeted plaintiff because of his race or that race otherwise played a role in the events in question. As a result, this Court must exclude any evidence, argument, or reference to race or racial animus under Rules 402 and 403.

**<u>Motion *in Limine* No. 9</u>:**

**Motion to Preclude Plaintiff's Liability Expert From Offering Certain Inadmissible Opinions Pursuant to Fed. R. Evid. 402, 403, and 702 and *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579 (1993)**

Maulson pursues a single Section 1983 claim alleging that Taege violated his "Fourth Amendment right to be free from excessive force by intentionally tripping [Maulson] while he was handcuffed and compliant." (ECF No. 1, ¶ 25.)

Fourth Amendment claims are analyzed under an "objective reasonableness" standard. *Jump v. Village of Shorewood*, 42 F.4th 782, 793 (7th Cir. 2022). A plaintiff must show that the defendant (1) engaged in intentional conduct, and (2) the conduct was objectively unreasonable under the circumstances. *Pittman by & through Hamilton v. Madison County, Ill.*, 108 F.4th 561, 564, 567 (7th Cir. 2024); *Estate of Sillah by Carter v. City of Madison*, No. 23-CV-96-JDP, 2024 WL 4650945, at *9 (W.D. Wis. Nov. 1, 2024).

Maulson's liability expert, William A. Duggan, offers opinions on both prongs of this test that are effectively just legal conclusions, would not be helpful to the jury, and pose a substantial risk of prejudice and jury confusion. Duggan also expresses opinions that are irrelevant to Maulson's "intentional tripping" claim. Under Federal Rules of Evidence 402, 403, and 702 and *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579 (1993), the Court should bar Duggan from offering these opinions at trial.

### A. *The Court Should Exclude Duggan's Opinion That Taege's Conduct Was "Unreasonable" and "Objectively Unreasonable."*

In his expert report, Duggan offers a "primary opinion" that the force used by Taege was "not proportional nor was it reasonable." (Jones Decl., Ex. 1 at 13.) He states that Taege violated plaintiff's "right of being free from unreasonable levels of force" and exhibited conduct "beyond what any reasonable response to the totality of circumstances would warrant." (*Id.* at 21, 24.) Duggan concludes that Taege applied force "without objective reasonability." (*Id.* at 25.) Duggan confirmed in his deposition that believes the "force that Deputy Taege used was unreasonable under the totality of the circumstances" and was "objectively unreasonable." (Jones Decl., Ex. 2 at 58:10–19.)

These are inadmissible opinions on an ultimate legal question. Although the federal rules do not automatically exclude an ultimate-issue opinion, it "must be helpful to the trier of fact" under Rule 702 and may not "merely tell the jury what result to reach[.]" *Woods v. Lecureux*, 110 F.3d 1215, 1219 (6th Cir. 1997) (quoting advisory committee notes to Fed. R. Evid. 702). The opinion also must not run afoul of Rule 403. *See Thompson*, 472 F.3d at 458.

In *Thompson*, the Seventh Circuit affirmed exclusion of expert testimony that an officer used excessive force during an arrest. The testimony "would have been of little value," the Court explained, because the jury "was in as good a position as the experts to judge whether the force … was objectively reasonable." *Id.* Allowing the expert's opinion would also have run the risk of jury confusion and prejudice. *Id.*

For similar reasons, this Court barred an expert from testifying that officers used "excessive, unnecessary and unreasonable force" in *Rivera v. Heck*, No. 16-cv-673-wmc, 2018 WL 4354949, at *3 (W.D. Wis. Sept. 12, 2018). The Eastern District of Wisconsin

did likewise in *Conforti v. City of Franklin*, explaining that "an expert is generally prohibited from offering legal opinions." No. 20-C-349-LA, 2022 WL 19404840, at *4 (E.D. Wis. Apr. 20, 2022). "[I]t is the role of the judge, not an expert witness, to instruct the jury on the applicable principles of law, and it is the role of the jury to apply those principles of law to the facts in evidence." *Id.* (quoting *Jimenez v. City of Chicago*, 732 F.3d 710, 721 (7th Cir. 2013)).

Here, this Court will instruct the jury on the meaning of the Fourth Amendment in excessive force cases and the objective reasonableness standard. The jury then will apply that standard to the facts. Duggan's opinion that Taege's conduct was unreasonable, in its various formulations, would not assist the jury in discharging their duty, would be prejudicial and potentially confusing to the jury, and would risk usurping the jury's role. The Court should rule that these opinions are inadmissible.

*B. The Court Should Exclude Duggan's Opinion That Taege's Conduct Violated Maulson's Rights, "Case Law," and the Fourth Amendment.*

The same reasoning should bar Duggan's opinions that Taege violated the governing law and plaintiff's legal rights. Duggan explains in his report that he "conducted a thorough review of … legal precedents," and evaluated "relevant case law." (Ex. 1 at 2, 13.) He concludes that Taege's conduct was "not consistent with … current case law" and "conflicted with the clearly established rights of Maulson." (*Id.* at 14, 25.) Duggan also testified that in his opinion Taege's use of force "was not objectively reasonable based on [Duggan's] understanding and the read of case law interpreting the Fourth Amendment." (Ex. 2 at 107:23–108:7.)

These are "plainly improper legal conclusions." *Rivera*, 2018 WL 4354949, at *3. They "merely tell the jury what result to reach." *Woods*, 110 F.3d at 1219 (citation

omitted). They offer no help to the jury, risk confusion and prejudice, and overtly intrude on the jury's task of applying the law and reaching a verdict.

*C. The Court Should Bar Duggan From Opining on Taege's Intentionality and State of Mind.*

Duggan next offers opinions on the motivation behind Taege's interaction with Maulson. Duggan states that Taege "made intentional decisions in the initial contact," "intentionally stepp[ed] ahead of Maulson's right leg," and made "intentional decisions to speed up the pace of contact." (Ex. 1 at 13–14.) Duggan characterizes plaintiff's fall as an "intentional block/trip to a handcuffed subject." (*Id.* at 21.) Going further, Duggan comments that Taege's actions "elicit the feeling" of a "'contempt of cop' situation" where Taege "simply didn't like how Maulson was behaving." (*Id.* at 18.)

Elsewhere, however, Duggan states that he evaluates Taege's conduct "without regard to real or perceived underlying intent or motivation." (*Id.* at 6.) And he testified that he is not "offering any opinion or opinions as to what Taege subjectively intended by anything he did or said during his interaction with Mr. Maulson." (Jones Decl., Ex. 2 at 64:8–12.)

Despite these inconsistent statements, plaintiff has not withdrawn Duggan's opinions on this subject. The Court should issue an order precluding them. Duggan has no special expertise to offer the jury concerning Taege's mental state, and his opinion will not help the jury. It may, on the other hand, confuse the jury or prejudice Taege. In comparable cases, courts have prohibited an expert from opining on a defendant's intentions. *See*, *e.g.*, *Woods*, 100 F.3d at 1221 ("[B]y expressing the opinion that Tessmer was deliberately indifferent, Dr. Mintzes gives the false impression that he knows the answer to this inquiry, which depends on Tessmer's mental state."); *Isom v. Howmedica,*

*Inc.*, No. 00-C-5872, 2002 WL 1052030, at *2 (N.D. Ill. May 22, 2002) (citing *Woods* and precluding expert from testifying about intent).

*D. The Court Should Exclude Duggan's Opinions About Maulson's Detention and Handcuffing.*

Finally, although plaintiff's only claim alleges that Taege "intentionally tripped" him (ECF No. 1, ¶ 25), Duggan also offers opinions about the reasonableness of plaintiff's initial detention and handcuffing preceding his fall. Duggan's opinion no. 4 states that Taege's initial contact with plaintiff "does not pass the reasonable test" and that "[a]n officer cannot handcuff a subject" who is merely uncooperative. (Jones Decl., Ex. 1 at 15.) He later reiterates that "it would not be reasonable to handcuff someone simply because they were a 'no' person." (*Id.* at 17.)

Those opinions are not relevant to plaintiff's claim. He did not bring a false arrest claim or challenge the legality of Taege's use of handcuffs. Duggan's opinions are thus inadmissible under Rule 402. *Cf. Rivera*, 2018 WL 4354949, at *3 (excluding opinion on "whether Rivera was held in handcuffs for too long" because "Rivera has not raised a claim of excessive force based on handcuffing"). Allowing this testimony will waste time and potentially distract or confuse the jury, warranting exclusion under Rule 403 as well. *Cf. id.* at *3 (holding that allowing opinions on "issues that are not relevant to the remaining claims … would be distracting or confusing").

**<u>Motion *in Limine* No. 10</u>:**

**Motion to Preclude Plaintiff From Offering Any Evidence or Argument Related to Alleged Lost Future Earnings Pursuant to Fed. R. Evid. 403 and 702**

Plaintiff lacks sufficient evidence to support a claim for lost wages incurred after April 18, 2025—the date that plaintiff's medical restrictions were lifted and plaintiff could

have returned to the same type of gainful employment. After April 18, 2025, plaintiff lacks competent evidence that the range of economic opportunities available to him were narrowed because of injuries sustained in the incident. Therefore, any evidence or claim for damages for lost wages or loss of future earning capacity after April 18, 2025 must be excluded.

"To recover for lost earning capacity, a plaintiff must produce competent evidence suggesting that his injuries have narrowed the range of economic opportunities available to him." *McKnight v. Gen. Motors Corp.*, 973 F.2d 1366, 1370 (7th Cir. 1992) (citations omitted). In other words, "a plaintiff must show that his injury has caused a diminution in his ability to earn a living." *Id.* (citations omitted); *see also Teresko v. The 3M Co.*, No. 22-CV-1532-JPS, 2024 WL 2864402, at *16 (E.D. Wis. June 16, 2024) (noting that "the threshold issue to recover for lost earning capacity at all requires that a plaintiff produce evidence of vocational loss").

Plaintiff lacks evidence of a vocational loss after April 18, 2025. Plaintiff's complaint alleges vocational loss stemming solely from physical injuries, primarily plaintiff's knee. (ECF No. 1, ¶¶ 19, 23.) Plaintiff disclosed a vocational expert, Emily Veith, who opines on plaintiff's alleged past and future wage loss tied specifically to plaintiff's knee: "Due to the right knee injury sustained in this incident, in my opinion, Mr. Maulson has experienced a past wage loss through April 18, 2025 . . . ." (Jones Decl., Ex. 3 at 7-8.)

For the lost wage claims tied to plaintiff's right knee injury, Veith calculates claimed lost wages only through April 18, 2025. (*See id.*) Veith then admits that the vocational loss attributable to the incident stopped on April 18, 2025, because plaintiff was medically cleared to return to his prior employment:

> As of April 18, 2025, Dr. Rossow lifted the restrictions for the knee, . . In my opinion, Mr. Maulson would be physically able to resume working as a heavy equipment operator and foreman with the April 2025 restrictions from Dr. Rossow such that his past wage loss due to the knee injury alone would cease as of April 18, 2025 (15.5 weeks into 2025).

(*Id.* at 7.)

Despite no longer being under any ongoing medical restrictions due to injuries caused by the incident with Taege, Veith's report notes that plaintiff "has not worked in any capacity since January of 2025" and "has not applied for any jobs since the incident[.]" (*Id.* at 5.) According to Vieth, plaintiff also has not contacted the Division of Vocational Rehabilitation. (*Id.*)

Yet, Veith nonetheless opines that plaintiff continues to suffer wage loss after April 18, 2025:

> Because he continues to be off work due to the totality of his medical conditions, including an inability to proceed with a right knee replacement due to complicating medical factors, he continues to lose wages of $1,788.88 a week. . .

(*Id.* at 8.) In doing so, however, Veith concedes that plaintiff's "wage loss from April 18, 2025 onward would not be due to the knee injury alone[.]" (*Id.*) In her deposition, Veith admitted that plaintiff's decision not to obtain gainful employment after January 2025 is not based upon any assessment of plaintiff's ability to work. (Jones Decl., Ex. 4 at 45:3-19.) Rather, Veith based this opinion on plaintiff's self-reported medical conditions and medical treatment after April 18, 2025 that Veith admits she is unable to tie to the incident. (*See id.; see also id. at* 48:25 – 49:25.)

Veith's report and opinions are carefully tailored to match the limits of the vocational loss of this case and a tacit admission that there is no credible evidence to support a wage loss claim after April 18, 2025. Veith specifically opines on the lost wages "due to the right knee injury" and limits them to April 18, 2025—the date the knee related

medical restrictions were lifted. (*Id.* at 7.) Veith then admits that any vocational loss after April 18, 2025 "would not be due to the knee injury alone." (*See id.* at 7-8.)

Meanwhile, Veith expressly concedes that plaintiff was able to return to his prior gainful employment as of April 18, 2025, but has not. Once plaintiff was medically cleared to return to his prior employment, the vocational loss ended there as a matter of law. At that point, plaintiff could no longer show a diminished capacity to earn a living that was caused by the incident. *See Newsome v. Wisconsin Cent. Ltd.*, 131 F. Supp. 3d 782, 788 (E.D. Wis. 2015) (denying partial summary judgment on loss of future earning capacity because the plaintiff "presented competent evidence suggesting that his injuries have narrowed his range of economic opportunities").

The only vocational opinion in this case is that by April 18, 2025, plaintiff was able to return to the same gainful employment he had prior to the subject incident. Therefore, there is no credible evidence to support any claim for lost wages after April 18, 2025. The claim, the potential damages, and the evidence necessary to support the alleged damages must be limited accordingly.

**Motion *in Limine* No. 11:**

**Motion to Exclude Evidence and Argument Related to Insurance Coverage or Indemnification Pursuant to Fed. R. Evid. 402, 403, and 411**

Taege has not placed his financial condition at issue in this action, and he does not intend to do so of his own accord at trial. Taege's employer, Oneida County, is insured by Wisconsin County Mutual Insurance Company, subject to the terms, conditions, and exclusions of its policy, and Wis. Stat. § 895.46 provides for indemnification with respect to judgments against officers for acts performed within the scope of their employment and in the course of their official duties. However, this Court should not permit evidence

or testimony on either of these subjects pursuant to Federal Rules of Evidence 402, 403, and 411 because Taege will not place his financial condition at issue.

In *Lawson v. Trowbridge*, the Seventh Circuit explained that "[i]n the general case courts exclude evidence of indemnification out of a fear that it will encourage a jury to inflate its damages award because it knows the government—not the individual defendants—is footing the bill." 153 F.3d 368, 379 (7th Cir. 1998) (citation omitted). The *Lawson* court evaluated a case in which the defendants placed their "financial weakness" at issue in the course of direct testimony in the damages phase of the trial, which "opened the door" to evidence regarding Wisconsin's indemnification statute. *Id.*

In contrast, in this case, Taege will not place his financial condition at issue. Accordingly, this Court should not allow plaintiff to present any evidence of insurance coverage or indemnification under Wisconsin law to the jury pursuant to Rules 402 and 403. The fact that any damages award against Taege would potentially be subject to insurance coverage or indemnification will not aid the jury in deciding whether any relevant fact is more or less probable. In fact, knowledge of the availability of insurance or indemnification may induce the jury to decide the case (or, at least the issue of damages) on improper grounds. The existence of insurance and the potential for indemnification are, therefore, irrelevant and should also be excluded due to the substantial danger of unfair prejudice.

Moreover, Rule 411 prohibits a party from presenting evidence of insurance coverage in an attempt to prove fault or liability. Specifically, it states that "[e]vidence that a person was or was not insured against liability is not admissible to prove whether the person acted negligently or otherwise wrongfully." Fed. R. Evid. 411. Based on this language, courts have routinely held that reference to insurance coverage during the

course of a trial is inappropriate and, in some instances, may constitute reversible error. *See*, *e.g.*, *Adams Labs., Inc. v. Jacobs Eng'g Co.*, 761 F.2d 1218, 1226-27 (7th Cir. 1985); *Raybestos Prods. Co. v. Younger*, 54 F.3d 1234, 1239-40 (7th Cir. 1995).

There is no reason to deviate from these well-established principles here. Any such evidence or argument relating to insurance coverage or indemnification should be excluded under Rules 402, 403, and 411.

## CONCLUSION

For the reasons stated above, Taege respectfully requests that this Court grant his motions *in limine* and award such other and further relief as this Court deems appropriate.

Dated at Milwaukee, Wisconsin this 7th day of August, 2026.

**HANSEN REYNOLDS LLC**

/s/ Andrew A. Jones
Andrew A. Jones
John W. McCauley
301 North Broadway, Suite 400
Milwaukee, Wisconsin 53202
(414) 455-7676
ajones@hansenreynolds.com
jmccauley@hansenreynolds.com

*Attorneys for Defendant Will Taege*