**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF WISCONSIN**

---

THOMAS J. MAULSON,

Plaintiff,

v. Case No. 25-cv-638-wmc

WILL TAEGE,

Defendant.

---

**DEFENDANT'S MEMORANDUM IN RESPONSE TO PLAINTIFF'S MOTIONS *IN LIMINE***

---

Defendant, Will Taege ("Taege"), submits this memorandum in response to plaintiff's motions *in limine* (ECF No. 17).

## ARGUMENT

### Response to Motion *in Limine* No. 1

### To Exclude or Limit the Expert Testimony of Dennis Angle

Plaintiff moves *in limine* for an order either excluding or, in the alternative, limiting the testimony of Taege's liability expert, Dennis Angle. Angle's testimony should not be excluded or limited in any respect, and plaintiff's motion should be denied.

#### A. Angle's Proposed Testimony Should Not Be Excluded.

A police officer's compliance with his training (or applicable policy) is not dispositive of whether a use of force by the officer is objectively reasonable under the Fourth Amendment. It can, however, be a relevant consideration for a jury in assessing whether the force in question was reasonable. The Seventh Circuit's Pattern Civil Jury Instructions state exactly that: "You may consider this evidence in your deliberations [as

to plaintiff Thomas Maulson's excessive force claim]. But remember that the issue is whether [Taege used excessive force on plaintiff], not whether [an Oneida County Sheriff's Office rule or policy or Taege's training] might have been complied with." Seventh Circuit Pattern Civil Jury Instruction 7.04 (as modified to fit plaintiff's claim). Plaintiff himself proposes that the Court instruct the jury using this instruction. (*See* ECF No. 15 at 30.)

This pattern instruction is well-founded in applicable Seventh Circuit precedent. In *Mays v. Springborn*, for instance, the Seventh Circuit concluded: "[A]lthough violation of the prison's rule against public searches was not, by itself, a violation of the constitution, it was relevant evidence on which the jury could have relied to conclude that the searches were done with an intent to harass." 575 F.3d 643, 650 (7th Cir. 2009). Likewise, in *Jimenez v. City of Chicago*, the Seventh Circuit held:

> In constitutional tort cases, expert testimony regarding sound professional standards governing a defendant's actions can be relevant and helpful. . . . Expert testimony regarding relevant professional standards can give a jury a baseline to help evaluate whether a defendant's deviations from those standards were merely negligent or were so severe or persistent as to support an inference of intentional or reckless conduct that violated a plaintiff's constitutional rights.

732 F.3d 710, 721-22 (7th Cir. 2013); *see also Florek v. Village of Mundelein, Ill.*, 649 F.3d 594, 602 (7th Cir. 2011) ("[E]xpert testimony is more likely to satisfy Federal Rule of Evidence 702's requirement that it 'assist the trier of fact to understand the evidence or determine a fact in issue' when something peculiar about law enforcement (*e.g.*, the tools they use or the circumstances they face) informs the issues to be decided by the finder of fact.").

The cases cited by plaintiff do not point to a different conclusion. In fact, in *U.S. v. Brown*, cited by plaintiff, the Seventh Circuit made clear that there is no rule that evidence of police policy or procedure is *per se* irrelevant to the objective-reasonableness inquiry,

as plaintiff seems to assert. 871 F.3d 532, 537 (7th Cir. 2017) (citing *Florek*, 649 F.3d at 602-03). In discussing the issue, the Seventh Circuit expressly noted that *Thompson v. Chicago*, 472 F.3d 444 (7th Cir. 2006), also cited by plaintiff, should not be read as having established such a rule. 871 F.3d at 537.

Instead, as the court reasoned in *Brown*, expert testimony as to police policy or procedure can assist a jury in understanding a particular technique used by an officer in the field consistent with Rule 702. *Id*. Further, as the court observed, the applicable legal standard in a Fourth Amendment excessive force case is a reasonable officer standard, not a reasonable person standard, "so it may be useful in a particular case to know how officers typically act in like cases." *Id*. "'[W]hen something peculiar about law enforcement (*e.g*., the tools they use or the circumstances they face) informs the issues to be decided by the finder of fact, a juror's everyday experience may not be enough to effectively assess reasonableness.'" *Id*. at 538 (quoting *Florek*, 649 F.3d at 602).

Here, Angle's intended testimony is relevant and should not be excluded. As explained in his report, Angle analyzed the events in question to determine, based on his experience as a sworn law enforcement officer and a credentialed use-of-force instructor, whether Taege's actions were consistent with techniques taught to all law enforcement officers in Wisconsin. Specifically, he analyzed particular aspects of the interaction between plaintiff and Taege to identify specific actions or movements by plaintiff, as well as additional relevant circumstances, that would factor into the decision-making of a reasonable, well-trained law enforcement officer under the same circumstances. (ECF No. 31 (Angle Report) at 44-45.) This included, for instance, his consideration of particular conduct by plaintiff that posed a threat to Taege's safety (*id*. at 26-36), the techniques that

Taege used to respond to that threat, and whether his response was consistent with how a reasonable, well-trained officer would act under the same circumstances (*id.* at 40-41).

As such, Angle's proposed testimony is relevant under Rule 402 and consistent with applicable Seventh Circuit precedent because it will aid the jury in understanding and assessing the events in question from the perspective of a reasonable law enforcement officer. This is especially true given how quickly the critical events leading to plaintiff's fall occurred. Without expert testimony about how law enforcement officers in Wisconsin are trained to understand and respond to detainees' actions and the techniques they are trained to employ, the jury's everyday experience is unlikely to be sufficient to understand the split-second sequence of events that preceded plaintiff falling to the pavement.

Angle's proposed testimony also does not raise Rule 403 concerns. Unlike plaintiff's liability expert, Angle does not intend to offer an opinion that the force used by Taege was not excessive, was reasonable, or was otherwise consistent with the Fourth Amendment. (*Compare* ECF No. 24 at 12-14 *with* Angle Report *generally*; *see also* ECF No. 10 (Angle Tr.) at 108:24 – 109:9.) Nor does Angle, in contrast to plaintiff's liability expert, purport to offer an opinion as to Taege's subjective state of mind or intent during his encounter with plaintiff. (*Compare* ECF No. 24 at 14-15 *with* Angle Report *generally*.) As a result, there is minimal, if any, risk that the jury would be led to improperly conflate Angle's testimony with the ultimate question of whether the force used by Taege was objectively reasonable, particularly with the limiting instruction contemplated by the Seventh Circuit in its pattern civil jury instructions.

Moreover, if they are to be credited, the grounds for plaintiff's motion apply with even greater force to the proposed testimony of plaintiff's liability expert. Indeed, Angle was identified as an expert in response to plaintiff's liability expert witness disclosures. In

other words, Angle is responding to plaintiff's liability expert, who offers the opinion that Taege's actions were not consistent with his training or the Oneida County Sheriff's Office use of force policy. (*See*, *e.g.*, ECF No. 25-1 (Duggan Report) at 14, 22-23, 24-25; ECF No. 27 (Duggan Tr.) at 51:25 – 52:6, 55:11-16, 103:6-20, 105:8-23, 109:22 – 110:2, 111:6-22, 118:9 – 119:6, 122:7-18, 123:1-12, 127:5-14.) And he does so on top of his inadmissible opinion that Taege's use of force was unreasonable under the Fourth Amendment and his equally inadmissible opinions as to Taege's subjective intent. (*See* ECF No. 24 at 12-15.) As Taege argues in his motion *in limine* to exclude any such testimony by plaintiff's liability expert (*see id.*), and as the cases cited by plaintiff make clear, it is well established that such testimony is inadmissible. *See*, *e.g.*, *U.S. v. Brown*, 871 F.3d at 539 (observing that an expert's role is to help the trier of fact understand the evidence, . . . not to draw conclusions *for* the fact finder when no help is needed") (internal quotation marks and citation omitted) (emphasis in original); *Thompson v. City of Chicago*, 472 F.3d at 458 ("Introducing two experts to testify that [the defendant] used excessive force would have induced the jurors to substitute their own independent conclusions for that of the experts"). Thus, to extent Angle's proposed testimony is irrelevant under Rule 402 or subject to exclusion under Rule 403, so, too, must be the proposed testimony of plaintiff's liability expert.

**B. Angle's Testimony Should Not Be Limited Either.**

Plaintiff's remaining arguments ask the Court to enter an order limiting Angle's testimony. They are unpersuasive and should be rejected.

*First*, despite plaintiff's arguments to the contrary, Angle formed his opinions in reliance on the same substantive training curriculum taught to plaintiff during his initial academy training. As Angle noted in his written report, he relied on several training

modules promulgated by the Wisconsin Department of Justice Law Enforcement Standards Board (LESB) in effect during the time between when Taege was first trained and the events in question, including the 2017 Defensive and Arrest Tactics (DAAT) Instructor Manual (which, logically, would track the use of force training provided to recruits via the 2017 DAAT Student Text), as well as 2020 LESB training module regarding professional communication skills and the 2021 DAAT student text. (*See* Angle Report at 46.) As Angle testified, the modules he referenced in his report did not change substantively between 2017 and 2024 as they related to the training concepts covered by his opinions. (Angle Tr. at 119:22 – 120:16.) For instance, the LESB DAAT training regarding escort holds—which plaintiff singles out as "directly on point" (*see* ECF No. 17 at 8)—is identical between the 2017 and 2021 student texts. (Declaration of Andrew A. Jones, dated August 21, 2026, Exhibits 1, 2.)

Plaintiff has not offered any proof that the training principles relied on by Angle in forming his opinions are any different from those taught to Taege in his academy training. Instead, plaintiff offers only his conclusory assertion that Angle's sworn testimony, as someone with 32 years of experience as a sworn law enforcement officer and 29 years of experience as a credentialed use-of-force trainer in Wisconsin, "does not cure the [alleged] defect." (ECF No. 17 at 8.) Plaintiff is free to pursue this argument on cross examination if he thinks it persuasive, but it is not a proper basis to exclude or limit Angle's testimony.

*Second*, Angle analyzed at length Taege's actions in moving plaintiff from the driver's side door of his truck to Taege's squad car, including his positioning relative to plaintiff and his response to plaintiff having turned back to him in close proximity and having pulled his arm from Taege's hold, relying directly on those portions of the LESB

training modules that he believes to be relevant to his opinions. (Angle Report 28-41.) The fact that plaintiff believes other portions of the training modules are more pertinent is fodder for cross examination, but it is not grounds for excluding or limiting Angle's testimony in any respect.

*Third*, the same is true of plaintiff's complaint that Angle did not explicitly refer to the Oneida County Sheriff's Office use-of-force policy in his report. Angle relied directly on those portions of the training provided to plaintiff (and every other law enforcement officer in Wisconsin) in forming and expressing his opinions as to whether Taege's actions were consistent with that training. The fact that plaintiff believes other aspects of Taege's training—or, more specifically, an agency policy—might be more relevant is not a basis to exclude or limit Angle's testimony. At most, it is potential material for plaintiff's cross examination of Angle.[1]

*Fourth*, plaintiff simply ignores portions of Angle's report in arguing that he testified to an undisclosed species of use-of-force training in his deposition. (*See* ECF No. 17 at 9-10.) In fact, Angle specifically quotes from portions of the DAAT training modules that address untrained, but justifiable uses of force, and he analyzes the application of that concept and related trained techniques to the events at issue in his report. (Angle Report at 40-41.)

*Fifth*, and finally, as plaintiff concedes, an expert is permitted "to use his own words to describe conduct." (ECF No. 17 at 10-11.) Yet, plaintiff quibbles with the phrasing

[1] Ironically, despite asking this Court to exclude Angle's testimony in its entirety on the grounds that, in addressing Taege's training, he is opining on a subject that is irrelevant to the jury's task, plaintiff simultaneously refers to the LESB training modules and the Sheriff's Office's use of force policy as "governing standards." (ECF No. 17 at 9.) They are not, as plaintiff himself argues elsewhere in his motions *in limine* and as this Court should instruct the jury.

used by Angle to describe Taege's actions in responding to plaintiff's movements as he escorted him from his truck to the squad car, complaining that he substitutes his own terminology for Taege's description of the events in question. This is no basis to exclude or limit Angle's testimony. Instead, Angle should be free—as plaintiff concedes he is—to describe the pertinent events in the way he believes best captures what in fact occurred. Whether that description accurately captures what occurred (and it does—*compare* Angle Report at 41 *with* Taege Tr. at 50:17-25, for instance) is a matter for cross examination, and not for a pre-trial order excluding the testimony.

For these reasons, plaintiff's motion *in limine* seeking to exclude or limit Angle's testimony should be denied in its entirety.

## **Response to Motion *in Limine* No. 2**

### **To Exclude Evidence Related to Payment of Medical Expenses and Wages by Third-Parties**

Plaintiff moves to exclude any evidence regarding the fact that certain medical expenses and wages have been paid on his behalf by third-parties. Taege does intend to introduce any such evidence and, as such, does not oppose this motion *in limine*.

## **Response to Motion *in Limine* No. 3**

### **To Exclude Evidence Related to Plaintiff's Prior Misdemeanor Conviction for Possession of Marijuana**

Plaintiff moves to exclude any evidence regarding his 2014 misdemeanor conviction for possession for marijuana. Taege does not intend to introduce any such evidence and, as such, does not oppose this motion in *in limine*.

## **Response to Motion *in Limine* No. 4**

### **To Instruct the Jury That the Medical Expenses Reflected in Plaintiff's Proposed Exhibits Are the Reasonable and Necessary Cost of Injuries Suffered by Plaintiff As a Result of His Arrest**

Plaintiff moves for an order instructing the jury that "plaintiff's medical expense itemization is the reasonable and necessary cost of the medical care received by [plaintiff] as a result of his injuries." This motion *in limine* must be denied because it is premature, as there is an active dispute between the parties over which medical expenses incurred by plaintiff relate to any injuries he suffered as a result of the events in question.

Plaintiff does not cite any legal authority in support of this motion. Instead, plaintiff references Taege's answers to requests for admission regarding plaintiff's medical expenses as the sole basis for the motion. (ECF No. 17 at 15 (citing ECF No. 18-2).) Based upon those responses, plaintiff claims there is no dispute over the medical expenses and that they "should be inserted in the verdict as undisputed." (*Id.*)

However, as Taege's responses to plaintiff's requests for admission made clear, he disputes whether certain of plaintiff's medical expenses are related to any injuries suffered by plaintiff as a result of his arrest. (*See* ECF No. 18-2 at Answers to Request Nos. 2, 4, and 6 (denying that the care and treatment received by plaintiff was all because of the events at issue).) As a result, there is a dispute as to whether plaintiff's medical expenses are all related to or caused by his arrest. *See, e.g., Teresko v. The 3M Co.*, No. 22-CV-1532-JPS, 2024 WL 2864402, at *23 (E.D. Wis. June 16, 2024) (granting motion *in limine* only "to the extent that the parties agree on which health care records, billing statements, and invoices stem from the incident").

Plaintiff claims he is "not seeking an order regarding causation," but that is exactly what an order instructing the jury that the medical expenses reflect the reasonable and necessary cost of care received by plaintiff "as a result of his injuries" would represent. (ECF No. 17 at 15.) Due to the active dispute over whether plaintiff's medical expenses are

all related to the events at issue, plaintiff's motion is premature and should be denied. *See*, *e.g.*, *Stephen v. Home Depot U.S.A., Inc.*, No. 18 C 130, 2021 WL 4980085, at *5 (N.D. Ill. Oct. 6, 2021) (denying motion *in limine* to admit medical bills into evidence as premature, explaining that plaintiff must lay proper foundation during trial). Plaintiff will have the opportunity to establish the basis for any medical bills he believes are related to his arrest consistent with the evidentiary record he develops at trial, but there is no basis to conclude at this point that any itemization of his medical expenses appropriately reflects care and treatment that was necessary to address injuries suffered as a result of the arrest. That is a point which plaintiff will need to establish at trial before he may introduce these medical-expense records into evidence.

**Response to Motion *in Limine* No. 5**

**To Admit Plaintiff's Medical Records Without Further Testimony**

Plaintiff moves for an order "that medical records and bills from [certain medical providers] have been properly authenticated and may be introduced in evidence without further testimony." This motion has two parts: (1) that the medical records are business records and are authentic; and (2) that they may be admitted into evidence without further testimony.

There is no dispute as to the first aspect of plaintiff's motion, as Taege does not dispute that the medical records are authentic or that they are business records of the various providers.

But the second aspect of plaintiff's motion—that the medical records should be admitted without further testimony—is overbroad and must be denied. By plaintiff's own admission, plaintiff must "link[] the treatment to the conduct of Defendant." (ECF No. 17 at 16.) Without doing so, plaintiff has failed to lay the proper foundation that all of the

records—more specifically, that all of the care and treatment reflected in the records—are in fact relevant. To allow them to be admitted in full without such a proper foundation would invite the jury to simply assume that the care and treatment reflected in the record was related to any injuries suffered by plaintiff during his arrest. Such a result would be improper and unfairly prejudicial to defendant. *See*, *e.g.*, *Fermazin v. Menard, Inc.*, No. 15 C 7272, 2017 WL 1227937, at *3 (N.D. Ill. Mar. 31, 2017) (noting that, without seeing the medical records, court could not know "how much of the material in the records is relevant and how much of it is irrelevant").

At trial, plaintiff will have the opportunity (and obligation) to lay the necessary foundation to admit his medical records into evidence without the need to authenticate the records. *See*, *e.g.*, *Stephen*, 2021 WL at 4980085, at *5. To the extent that plaintiff seeks an order that the medical records are admissible solely because they have been authenticated and are not hearsay, that is insufficient and incorrect. Plaintiff cannot skip over his burden to lay the foundation that the records are also relevant. Plaintiff's motion should therefore be denied.

**Response to Motion *in Limine* No. 6**

**To Exclude Evidence That Plaintiff Had a Firearm in His Truck at the Time of His Arrest**

Plaintiff asks the Court to enter a categorical order excluding any mention, argument, or evidence that there was an AR-style rifle inside plaintiff's truck at the time of his detention by Deputy Taege. (Taege Tr. at 67:14–22.) That request sweeps too broadly.

It is true that Taege did not know about the firearm until after the arrest. (*Id.* at 68:4–10.) Taege does not contend that he may rely on facts he did not know at the time

to prove his actions were objectively reasonable. For that reason, he does not seek to affirmatively introduce evidence of the firearm in his case-in-chief.

But that does not make the firearm inadmissible for every purpose and in every possible context. Maulson alleges he "was not resisting … or posing any threat to Defendant or others." (ECF No. 1 (Compl.), ¶ 20.) If Maulson, his wife, or his experts offer testimony at trial that affirmatively creates a false or misleading factual impression about the absence of any danger in the truck cab or that otherwise opens the door, then the firearm may become admissible for the limited purpose of impeachment.

The proper course, therefore, is not blanket exclusion. Instead, the Court should reserve ruling on this issue unless and until it arises at trial in the context of specific testimony.

**A. Taege Does Not Seek to Affirmatively Rely on the Firearm.**

In an excessive-force case, the jury must analyze whether the officer's actions were objectively reasonable under the circumstances confronting him at the time of the incident. *Common v. City of Chicago,* 661 F.3d 940, 943 (7th Cir. 2011). This "refers only to those circumstances known and information available to the officer at the time of his action." *Sherrod v. Berry,* 856 F.2d 802, 804 (7th Cir. 1988) (en banc). "Knowledge of facts and circumstances gained after the fact" is generally not admissible to prove the reasonableness of the officer's use of force. *Id.* at 805.

Plaintiff argues that the firearm could not have affected Taege's decision-making because he did not know about it until after the arrest. Taege does not dispute that premise and does not seek to rely on the later-discovered firearm to show that his actions were objectively reasonable.

But plaintiff's requested order goes further. Plaintiff asks the Court to exclude any mention, argument, or evidence concerning the firearm for all purposes. That categorical request is not warranted because the firearm may become relevant for a limited and proper purpose depending on the testimony that plaintiff offers or elicits at trial.

### B. If Plaintiff Opens the Door, the Firearm May Become Admissible for Impeachment and Contradiction.

The Seventh Circuit cautioned that *Sherrod* "should not be interpreted as establishing a black-letter rule" absolutely barring evidence outside the officer's contemporaneous knowledge. 856 F.2d at 806. The court's decisions "do allow a peek under the blinders in certain circumstances." *Common,* 661 F.3d at 943. For example, facts unknown to the officer at the time of the incident may be admissible to contradict a witness's testimony, *id.* at 944, especially if the plaintiff opens the door by eliciting that testimony, *Estate of Escobedo v. Martin,* 702 F.3d 388, 400–01 (7th Cir. 2012).

Plaintiff's request to bar any mention of the firearm, regardless of how plaintiff's witnesses testify, goes too far. Plaintiff's pleadings and expert disclosures show that the existence or absence of a potential threat will be an issue for trial. The complaint alleges that plaintiff was not "posing any threat" to Taege. (Compl., ¶ 20.) Plaintiff's expert states that Taege "gave no indication of fear of any assault, threat or other danger." (Duggan Report at 12.) The expert questions whether it was reasonable for Taege to look back at plaintiff's wife as she moved inside the truck cab. (*Id.* at 17.)

If plaintiff's witnesses confine their testimony to what Taege knew and perceived at the time, Taege will not seek to use the firearm as evidence. But if a witness goes further and testifies that there was in fact no threat, no danger in the cab, or no reason for Taege

to monitor plaintiff's wife's movement, the actual presence of a firearm in the cab may become relevant for impeachment by contradiction.

A categorical exclusion order would improperly prevent Taege from responding if plaintiff's witnesses open the door. Plaintiff should not be permitted to present a misleading factual picture at trial that Taege is forbidden to correct.

**C. Any Rule 403 Concerns Can Be Addressed Through Trial Management Rather Than Blanket Exclusion.**

Plaintiff also seeks to exclude evidence of the firearm as unduly prejudicial and potentially confusing for the jury. But Rule 403 authorizes exclusion only when unfair prejudice or similar dangers substantially outweigh probative value. If plaintiff opens the door to this evidence at trial, then the probative value will need to be assessed and weighed in the context of the actual testimony, not in the abstract.

Further, the Court can mitigate any concerns about prejudice by requiring counsel to raise the issue outside the jury's presence before mentioning the firearm, by limiting the scope of questioning, or by giving an appropriate limiting instruction. That measured approach is preferable to a categorical pretrial order.

**Response to Motion *in Limine* No. 7**

**To Exclude Opinion Evidence Related to Plaintiff's Capacity to Work**

Plaintiff moves to exclude Taege from offering any opinion evidence regarding his capacity to work. Taege has not named an expert witness to testify about plaintiff's capacity to work, and he does not otherwise intend to offer any opinion evidence on the subject. In that respect, Taege does not oppose this motion *in limine*.

Nonetheless, Taege is entitled to cross-examine plaintiff's vocational rehabilitation expert, Emily Vieth, and any other witness offered by plaintiff, including plaintiff himself,

who testifies about plaintiff's work history, his search for work (or the lack thereof), or his capacity to work since his arrest. Plaintiff admits as much in his motion (*see* ECF No. 17 at 20, 20-21, 23-24), and nothing in *Certain Underwriters at Lloyd's, London v. Sinkovich*, 232 F.3d 200, 203 (4th Cir. 2000), and the other authority cited by plaintiff undermines this conclusion. Taege opposes plaintiff's motion to the extent it is intended to limit any such cross examination.

Dated at Milwaukee, Wisconsin this 21st day of August, 2026.

**HANSEN REYNOLDS LLC**

/s/ Andrew A. Jones
Andrew A. Jones
John W. McCauley
301 North Broadway, Suite 400
Milwaukee, Wisconsin 53202
(414) 455-7676
ajones@hansenreynolds.com
jmccauley@hansenreynolds.com

*Attorneys for Defendant Will Taege*